IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:10-CV-395-D

| | |
|---|---|
| MICHAEL K. PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Michael K. Parker ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 35, 37). Plaintiff filed a memorandum in support of his motion (D.E. 36) and the Commissioner a memorandum in support of his motion (D.E. 38). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 39). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

# I. BACKGROUND

## A.  Case History

Plaintiff filed applications for DIB and SSI on 22 March 2007, alleging a disability onset date of 1 September 2006. Transcript of Proceedings ("Tr." or "tr.") 18, 123-32. The applications were denied initially on 8 May 2007 (Tr. 18, 55-56, 59-64) and on reconsideration on 21 September 2007 (Tr. 18, 57-58, 67-75), and a request for a hearing was timely filed on 26 October 2007 (Tr. 18, 76-77). On 24 August 2009, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 30-54. Plaintiff was represented by counsel at the hearing. Tr. 18, 32. In a written decision dated 19 October 2009, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. 18-25. Plaintiff timely requested review by the Appeals Council, submitting with the request additional evidence (Tr. 431-48). Tr. 13. On 23 July 2010, the Appeals Council admitted the evidence into the record (Tr. 6), but denied the request for review (Tr. 1). At that time, the decision of the ALJ became the final decision of the Commissioner. Tr. 1; 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review with the filing of his complaint on 21 September 2010, pursuant to 42 U.S.C. § 405(g), following allowance of his motion to proceed *in forma pauperis*. (*See* Order (D.E. 3); Compl. (D.E. 4)). The parties subsequently filed their motions for judgment on the pleadings.

## B.  Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. §

2

1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *accord* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1 ("listings")] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1523, 416.923.

### C. Findings of the ALJ

Plaintiff was 36 years old on the alleged onset date of disability and 38 years old on the date of the administrative hearing. *See* tr. 23 ¶ 7.[2] Plaintiff has past work experience as a tire builder, curing press operator, wall washer, and plumber's helper. Tr. 23 ¶ 6.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 20 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: coronary artery disease, degenerative joint disease, and varicose veins. Tr. 20 ¶ 3; *see* 20 C.F.R. §§ 404.1520(c),

---

[2] For ease of reference, the court has included in citations to the ALJ's decision the numbered paragraph in which the cited material is located if text from more than one numbered paragraph appears on the page referenced.

416.920(c). At step three, the ALJ found that plaintiff's impairments did not meet or medically equal one of the impairments in the listings. Tr. 20 ¶ 4.

The ALJ then determined that plaintiff had the RFC to perform sedentary work subject to avoiding exposure to hazards and excessive dust, fumes, and gases. Tr. 21 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff could not perform his past relevant work. Tr. 23 ¶ 6.

At step five, the ALJ determined that there were jobs in the national economy in significant numbers that plaintiff could perform. Tr. 24 ¶ 10. These included the jobs of order clerk, call out operator, and charge account clerk, as described in the *Dictionary of Occupational Titles* (4th ed., rev. 1991) ("*DOT*").[3] *Id.* In making this determination, the ALJ accepted the testimony of a vocational expert specifying these jobs as among those that could be performed by a hypothetical person purportedly having the same capabilities as those of plaintiff. *Id.* The ALJ concluded that plaintiff was not disabled from the alleged onset of disability through the date of the decision. Tr. 25 ¶ 11.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court

---

[3] The *DOT* is a publication of the U.S. Department of Labor which provides a description of key attributes of numerous jobs. A copy is posted at http://www.oalj.dol.gov/libdot.htm (lasted visited 16 June 2011). The Regulations permit the Commissioner to take administrative notice of the information in the DOT in making disability determinations. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). The *DOT* codes for the identified jobs are as follows: order clerk, *DOT* code 209.567-014; call out operator, *DOT* code 237.367-014; and charge account clerk, *DOT* code 205.367-014.

finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401. When, as here, the Appeals Council accepts into the record evidence relating to the alleged period of disability not presented to the ALJ, the court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings."[4] *Wilkins v. Sec., Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (*en banc*).

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial

---

[4] If the ALJ's decision remains supported by substantial evidence when the evidence submitted initially to the Appeals Council is considered, no remand is necessary to permit the making of findings on the new evidence. *See, e.g., Smith v. Astrue*, No. 7:09-CV-82, 2010 WL 3210878, at *2 (E.D.N.C. 10 Aug. 2010); *King v. Barnhart*, 415 F. Supp. 2d 607, 610-11 (2005). That is the case here. The new evidence consists, in part, of records of a visit by plaintiff to his cardiologist on 23 October 2009 and related testing that are largely cumulative of evidence already in the record. Tr. 431-37. The remaining new evidence relates to a hospital stay from 2 to 4 November 2009 in which a defibrillator was implanted in plaintiff. Tr. 438-48. As discussed below, the need for such implantation was known to the ALJ. It was the subject of records that were in the case before the ALJ issued his decision and the implantation was discussed at the hearing.

6

evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that the ALJ erred by: (1) failing to find that plaintiff's varicose vein condition meets or medically equals Listing 4.11; (2) failing to properly consider Social Security Ruling 02-1p, 2000 WL 628049 (12 Sept. 2002)[5] on obesity; and (3) failing to properly assess plaintiff's credibility. The court will address each ground advanced by plaintiff in turn.

### C. Listing 4.11

Listing 4.11 addresses chronic venous insufficiency of a lower extremity. While the ALJ did not reference this listing specifically, his finding that plaintiff lacks an impairment or combination of impairments that meets or medically equals any listing encompasses Listing 4.11. Plaintiff contends that the ALJ should have found that he meets or medically equals this listing and that the

---

[5] Rulings are interpretations of the Act by the Social Security Administration that, while lacking the force of law, are entitled to deference unless they are clearly erroneous or inconsistent with the law. *Pass*, 65 F.3d at 1204 n.3 (citing *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.1989)).

ALJ did not adequately explain his listing determination. The court disagrees that the ALJ erred.

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing not only any substantial gainful activity, but any gainful activity at all. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet or equal a listing, that fact alone establishes that the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d).

An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. R. 83-19, 1983 WL 31248 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F. 2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan v. Zebley*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a), 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

Turning now to Listing 4.11, it requires "[c]hronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and one of the following:"

> A. Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip.

8

OR

B. Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

Listing 4.11.

Plaintiff does not specify whether he claims to meet or equal part A or part B of this listing. Review of the record shows, however, that there is substantial evidence supporting the ALJ's determination that plaintiff does not meet or equal either.

For example, with respect to part A, treatment records spanning 30 August 2006 to 23 October 2009 show no edema in plaintiff's lower extremities. Tr., *e.g.*, 206 (17 Oct. 2006), 214 (2 Sept. 2006), 267 (30 Aug. 2007), 421 (16 July 2009), 433 (23 Oct. 2009). With respect to part B, the record is bereft of evidence of ulcerations of plaintiff's lower extremities.

Plaintiff bases much of his argument that he meets or equals Listing 4.11 on his possession of a genetic disorder, factor V Leiden gene mutation, that exposes him to a high risk of deep venous obstruction through abnormal clotting.[6] But plaintiff has not demonstrated that this increased risk has materialized into an impairment or combination of impairments that meets or equals Listing 4.11.

As indicated, plaintiff makes the further argument that the ALJ did not adequately explain his determination that plaintiff fails to meet or equal Listing 4.11. This contention also lacks merit.

After making the finding that plaintiff lacks an impairment or combination of impairments that meets or equals any listing, the ALJ presents this explanation of his ruling:

---

[6] *See generally Genetic Conditions: Factor V Leiden thrombophilia*, U.S. Nat'l Library of Medicine, http://ghr.nlm.nih.gov/condition/factor-v-leiden-thrombophilia (lasted visited 16 June 2011).

> In making this finding, the undersigned has given consideration to the claimant's complaints (see sections 1.00 et seq., <u>Musculoskeletal System</u> and 4.00 et seq., <u>Cardiovascular System</u>). Despite the combined impairments, the medical evidence does not document listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

Tr. 20-21 ¶ 4.

By citing to the listings for the cardiovascular system, the ALJ indicates sufficiently that his consideration of the listings included Listing 4.11 in particular. His further statement that medical evidence does not establish the listing severity level or its equivalent clearly indicates the rationale underlying the ALJ's determination. He includes in the next section of his decision a detailed review of the medical evidence that substantiates this rationale. Given the tenor of the evidence bearing on the listings, the court finds the ALJ's explanation of his listing determination to be sufficiently specific.

The court concludes that the ALJ's listing determination is supported by substantial evidence and based on the proper legal standard. Plaintiff's first challenge to the ALJ's decision should accordingly be rejected.

### D.    Social Security Ruling 02-1p

Social Security Ruling 02-1p provides in general terms that if a claimant is obese, the obesity must be considered at each step of the sequential analysis after the first step. *See* Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *3. Plaintiff contends that he is obese and that his obesity, in combination with his cardiovascular impairments, meets or equals a listing, presumably Listing 4.11. In the alternative, plaintiff contends that his obesity is itself a severe impairment that deprives him of the RFC to perform work on a regular and continuous basis and thereby renders him disabled.

*See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 July 1996) (stating that RFC is ordinarily based ability to do work on a "regular and continuing basis," which means 8 hours a day for 5 days a week or an equivalent work schedule). Plaintiff also contends that the ALJ failed to consider his obesity in determining his RFC and that, as a result, the RFC determination is incomplete. None of plaintiff's contentions has merit.

Plaintiff's argument that he is obese rests on his calculation of his body mass index or BMI. BMI, a measure of overweight and obesity, equals the ratio of an individual's weight in kilograms to the square of his or her height in meters, or the ratio of an individual's weight in pounds times 703 to the square of his or her height in inches. Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *2 (citing *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults* (NIH Publication No. 98-4083, September 1998) (metric system calculation of BMI); *Weight Control Information Network: Body Mass Index, National Institutes of Health*, http://www.win.niddk.nih.gov/publications/tools.htm#bodymassindex (last visited 16 June 2011) (American system calculation of BMI). Plaintiff calculates his BMI at 31.5, which is over the threshold of 30.0 for obesity. (*See* Pl.'s Mem. 11); Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *2.

But plaintiff cites to no diagnosis of him as obese and there appears to be none, although on a few, sporadic occasions physicians noted that he had an obese abdomen. *See* Tr. 206 (17 Oct. 2006), 213 (5 Sept. 2006), 433 (23 Oct. 2009). Moreover, plaintiff calculated his BMI based on a weight of 259 pounds, using a height of 6 feet, 4 inches. (*Id.*). At the hearing, though, plaintiff testified that his weight was at that time 250 pounds. Tr. 50. Using that weight, plaintiff's BMI is 30.4, just above the 30.0 obesity threshold.

Perhaps more significantly, there is no evidence that plaintiff's weight impaired his ability to perform work activities. Indeed, when asked at the hearing why he was unable to work, plaintiff himself did not mention his weight. *See* tr. 38-41.

Thus, substantial evidence supports the ALJ in not finding plaintiff's weight, in combination with his cardiovascular impairments, to meet or equal a listing or to itself be a severe impairment. For the same reasons, the ALJ was not required to consider plaintiff's weight pursuant to Social Security Ruling 02-1p in determining plaintiff's RFC (or otherwise), to the extent that he did not. The courts have held that an ALJ is not required to conduct the analysis when as little evidence of obesity is presented as in this case. *See, e.g., Callicoatt v. Astrue*, 296 Fed. Appx. 700, 702 (10th Cir. 2008); *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005); *Cranfield v. Commissioner of Social Security*, 79 Fed. Appx. 852, 857 (6th Cir. 2003). The court should accordingly reject plaintiff's second challenge to the ALJ's decision.

### E. Plaintiff's Credibility

Plaintiff contends that the decision of the ALJ should be reversed on the ground that the ALJ failed to properly evaluate the credibility of plaintiff's allegations of limitations arising from his cardiovascular condition, which he contends is disabling. Again, the court disagrees that the ALJ erred.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Next,

the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.* at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "grounded in the evidence." *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4 (2 July 1996)); *see also* 20 C.F.R. §§ 404.1529 (setting out factors in evaluation of claimant's pain and other symptoms), 416.929 (same).

Here, plaintiff testified at the hearing that he was unable to work "because of shortness of breath, constant fatigue, and stage 3 varicose veins." Tr. 21 ¶ 5, 38-40. He said his shortness of breath and fatigue had not improved since his first heart attack in 2006 (his second was in March 2009). Tr. 38-39, 48. Plaintiff also testified to a lesion in his right eye that caused occasional blurriness and a knee problem requiring surgery. Tr. 21 ¶ 5, 40-42. Plaintiff said he could walk up to 15 minutes, stand for up to 10 minutes, sit for up to 15 minutes without having to change position, and lift up to 15 pounds. Tr. 21 ¶ 5, 44. His daily activities consist of watching television essentially all day. Tr. 21 ¶ 5, 45. The ALJ presented a summary of plaintiff's testimony in his decision. Tr. 21.

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 21 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's testimony was not fully credible. *Id.* He stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." *Id.* He further stated that "[a]lthough the claimant has impairments that could cause his reported symptoms, the objective evidence does not completely

support his allegations of disability" and "[h]ence the undersigned was unable to accord the claimant's allegations significant evidentiary weight." Tr. 23 ¶ 5.

The ALJ provided specific reasons for his credibility determination that are supported by substantial evidence of record. Tr. 23 ¶ 5. The principal reasons he gave include the following: one of plaintiff's treating physicians referred him to vocational rehabilitation, thereby suggesting that plaintiff had the ability to perform some type of work (Tr. 389 (7 Feb. 2001), 392 (12 Aug. 2008)); his hypertension is controlled with medication (Tr., *e.g.*, 426 (16 June 2009) ("HHD [hypertensive heart disease] (controlled)")); his coronary artery disease is reportedly stable (Tr., *e.g.*, 426 (16 June 2009), 428 (1 Apr. 2009), 353 (7 Feb. 2007), 382 (2 June 2008), 388 (25 July 2007)); a cardiologist reported that plaintiff's chest discomfort was not significant (Tr. 421 (16 July 2009)); his shortness of breath is only a class II,[7] which does not preclude work at the sedentary level (Tr. 421 (16 July 2009)); and plaintiff routinely denied chest pain and shortness of breath in 2008 when seen at Robeson Health Care Corporation ("RHCC") (Tr., *e.g.*, 381 (5 Mar. 2008) ("0 CP/SOB"), 382 (6 Feb. 2008), 393 (7 July 2008)).[8] Tr. 23.

---

[7] For an overview of the classification system, initially developed by the New York Heart Association, *see Classification of Functional Capacity and Objective Assessment*, American Heart Assn., http://my.americanheart.org/professional/StatementsGuidelines/ByPublicationDate/PreviousYears/Classification-of-Functional-Capacity-and-Objective-Assessment_UCM_423811_Article.jsp (last visited 16 June 2011). Although some records discussed in this section identify class using Arabic numerals, when not quoting these records, the court will refer to classes by Roman numerals because that is the format used in the *Classification*. Shortness of breath is referred to in the *Classification* using the medical term for it, dyspnea. *See* entry for "dyspnea," *Medline Plus*, U.S. Nat'l Library of Medicine, http://www.merriam-webster.com/medlineplus/dyspnea (last visited 16 June 2011). While the symptoms addressed in the *Classification* are not limited to shortness of breath and not all the medical records express the ratings in terms of shortness of breath specifically, the court focuses on shortness of breath in light of the finding upon which the ALJ relied.

[8] RHCC records from 25 July to 28 December 2007 show such denials as well. Tr. 383-88.

14

Moreover, it is apparent that the ALJ did give some weight to plaintiff's complaints. The ALJ found expressly that plaintiff's coronary artery disease, degenerative disk disease, and varicose veins are severe impairments and that he was limited to sedentary work, rather than work at a higher exertional level.

Plaintiff challenges the ALJ's credibility analysis, in part, on the grounds that two of the supporting reasons provided by the ALJ are invalid. One is that plaintiff has class II shortness of breath. Plaintiff contends that this justification is improper because a report by his cardiologist dated 4 November 2009, post-dating the hearing, states that plaintiff has "classification 2-3" shortness of breath. Tr. 445.[9] Plaintiff argues that this rating shows he is disabled because class II indicates marked limitation of physical activity, as opposed to slight limitation under class III.

The court disagrees that the ALJ's reliance on the class II finding was improper. Plaintiff does not dispute, as he cannot, that a cardiologist treating plaintiff did, in fact, make the class II finding (on 16 July 2009). Tr. 421. Moreover, the rating relied upon by plaintiff was not at the class III level, but, as indicated, at the "2-3" level. The clear implication is that plaintiff is somewhere between class II and III. Further, in finding plaintiff not to have disabling shortness of breath, the ALJ relied not simply on the rating, but other evidence as well, including plaintiff's own prior denials of shortness of breath. And, of course, the ALJ's findings on shortness of breath comprised only some of the reasons underlying his credibility determination.[10]

---

[9] The cardiologist made essentially the same finding, "classification 2/3," in the note of an office visit on 23 October 2009. Tr. 433.

[10] Because the "classification 2-3" rating in the 4 November 2009 record is to an extent cumulative of evidence already in the record and is not material (*i.e.*, the ALJ's decision remains supported by substantial evidence when the additional evidence is considered, as it must be), there is no need to remand on the grounds that it was not considered by the ALJ. *See, e.g., Smith v. Astrue*, No. 7:09-CV-82, 2010 WL 3210878, at *2 (E.D.N.C. 10 Aug. 2010); *King v.*

The other basis relied upon by the ALJ that plaintiff challenges is the finding that plaintiff's coronary artery disease is stable. But plaintiff himself acknowledges that cardiology records from April and June 2009 state just that. (Pl.'s Mem. 14); Tr. 426 (16 June 2009), 428 (1 April 2009). Although plaintiff suggests that in making this finding the ALJ did not consider the context of plaintiff's extensive history of cardiac problems, the ALJ, as indicated, reviewed comprehensively plaintiff's medical history in his decision.

It is true that the medical history did not, at the time of the ALJ's decision, reflect the implantation of a defibrillator into plaintiff in October 2009, which, as indicated previously, was the subject of records plaintiff submitted to the Appeals Council (Tr. 431-48). But the note on plaintiff's cardiology visit in July 2009 (Tr. 421) states that plaintiff was being referred for the implant, and the then upcoming implantation was discussed at the hearing (Tr. 33). Therefore, plaintiff's need for the defibrillator was a matter that was in the record before the ALJ issued his decision.

Plaintiff contends more broadly that the record taken as a whole establishes that plaintiff is disabled and that his allegations are credible. For the reasons stated, however, the court finds that substantial evidence supports the ALJ's determination that plaintiff is not disabled. Thus, plaintiff's final challenge to the ALJ's decision should be rejected.

The court concludes that the ALJ's credibility determination is supported by substantial evidence and based on the proper legal standards. Plaintiff's challenge to it is accordingly without merit.

---

*Barnhart*, 415 F. Supp. 2d 607, 610-11 (2005).

16

## III. CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's final decision is supported by substantial evidence and based on the proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 16 day of June 2011.

James E. Gates
United States Magistrate Judge